STATE v. RICHARD THOMPSON.

*Larceny—Evidence—Indictment—Nol pros—Verdict.*

1. After the jury is empannelled in a criminal action, the State cannot enter a *nol pros.* without the consent of the accused.

2. If upon the trial of an indictment, containing several counts, the jury is directed to confine its investigation to one count only, a general verdict of guilty will be construed as an acquittal on all the counts withdrawn from the consideration of the jury.

3. The defendant purchased a horse, but upon the condition that the title was not to pass until the price was paid; failing to pay, the vendor recovered possession, and thereupon the defendant, in the night, secretly took the horse from the vendor's stable and carried it away in a manner indicating a felonious purpose. *Held*, that a

charge to the jury that the defendant would be guilty of larceny if the taking was not under a *bona fide* belief that he had the *property*, or an *interest* in the horse, was not erroneous.

(*State* v. *Long*, 7 Jones, 24; *State* v. *Leak*, 80 N. C., 403; *State* v. *Taylor*, 84 N. C., 773; *State* v. *Johnson*, 75 N. C., 123; *State* v. *Lawrence*, 81 N. C., 523, cited and approved).

This was a CRIMINAL ACTION, tried before *Philips, Judge*, at July Term, 1886, of WAYNE Superior Court.

The indictment contained three counts, charging, in the first, the larceny of a mule belonging to Hiram Ginn; in the second, the wilful and felonious taking and carrying away the mule with intent to use it for a special and temporary purpose; in the third, with the unlawful receiving of the stolen mule, with knowledge thereof, under §§1066, 1067, and 1075 of *The Code*. The defendant, upon his arraignment, pleaded not guilty, and upon his trial the jury rendered a general verdict, declaring the defendant to be guilty "in manner and form as charged in the bill of indictment." It was thereupon adjudged that the defendant be confined in the State prison for the term of ten years, and he appealed. Following this record of the trial, appears this memorandum, bearing the signature of the presiding Judge: "The record herein is amended, by stating that the Court withdrew from the consideration of the jury all the counts in the bill except the first, and instructed them that they were not to consider the count for stealing the mule for a temporary purpose, and for receiving. The only issue submitted was as to the question of the guilt or innocence of defendant of the larceny as charged in the first count. After verdict, the solicitor entered a *nol. pros.* as to all but the first count in the bill of indictment."

The testimony in support of the charge of larceny, was to this effect: The mule belonged to Hiram Ginn, who, in 1884, sold her to one Henry Griffin, on condition that if paid for she should be his, and took the purchaser's note, to which

the defendant became a surety for the price. Part of the purchase money was afterwards paid, and Griffin being unable to pay the residue, surrendered the mule to Ginn, and the latter on his books entered a charge for the use of the mule, and a credit for the sum received. Ginn afterwards sold the mule to the defendant, on the terms that she was to become his property, if paid for in the Fall; and if not, he was to be accountable for her work. No part of the purchase money was paid, and in the following Spring the defendant, without Ginn's consent, exchanged the mule with one Exum for a horse. In the Fall of 1885, the defendant removed from the farm of Ginn to Pamlico county, whereupon the latter, in an action of claim and delivery, in which he alleged title to the horse exchanged for the mule, recovered possession from the defendant. Ginn, having the horse in possession, brought a similar action against Exum for the mule, pending which a re-exchange was made, and Ginn, delivering up the horse, received back the mule, which was afterwards, in the night, secretly taken from his stable and carried away by the defendant.

The defendant, examined on his own behalf, testified that he bought the mule from Ginn, on whose land he was a tenant, and paid for her; that Ginn consented to the trade with Exum; that returning from Pamlico he went to Ginn's lot and took the mule and carried her off, no person being present; that he carried her some distance through the woods before reaching the Pamlico road; that he knew he had no claim to the mule, but thought after Ginn had given up the horse to Exum, and taken back the mule, he had a right to take her, and did take her under this claim of right.

There was other evidence of prevarication, of denials of having taken possession, and of efforts to escape from the custody of the sheriff after his arrest, by the defendant.

A series of instructions, condensed but in substance as follows, was asked by defendant to be given to the jury :

I. If the defendant was the owner of the mule, or so believed, and took her under a *bona fide* claim of right; or

II. If the defendant had any interest in the mule, or so thought, and took possession accordingly; or

III. If the horse surrendered for the mule was the property of the defendant, the property in the mule would vest in the defendant, upon his assent to the transfer, and his taking her is evidence of such assent; or

IV. If in consequence of Ginn's sale to the defendant and delivering of possession, an interest therein passed, or the defendant believing he had such interest, took the mule in the *bona fide* assertion of such supposed interest; or

V. If Ginn, on taking back the mule from Griffin, placed her in defendant's possession, agreeing that he might keep her on paying the balance of the purchase money due from Griffin, an interest would vest in the defendant; or if so believing, the latter took the mule under a *bona fide* claim; in each of these aspects presented by the evidence, notwithstanding the *indicia* of guilt shown in the manner of taking, the jury must find a verdict of not guilty.

These instructions were not given, and instead, the jury were charged in substance thus:

A man cannot be convicted of larceny in taking his own property, and if the defendant had such property he cannot be convicted. It is in evidence that he parted with all his property in the mule to Exum, and the defendant himself testifies that he had no claim upon her. If the jury believe this evidence, the mule when taken from the lot of Ginn was in his possession and was his property, and was properly so charged in the indictment. Now, did the defendant take the mule, believing at the time that she was his property? He swears that he did, and if he honestly so believed, this would take from the act an element essential to the constitution of the crime—the felonious intent. This intent must co-exist with the act of taking to create the larceny, and its

presence distinguishes a larceny from a trespass. The clandestine taking and attempts to conceal the mule, furnish evidence of the criminal intent. The State insists, that the defendant's statement of his belief as to the vesting of any interest in him, has been proved to be false by his secret taking at night, his passing through the woods, his denials to the sheriff, and his changing his name on removing to Pamlico. All this evidence the jury may consider, with such further evidence as has been heard, in ascertaining the defendant's intent. The defendant's counsel contended that he acted in the *bona fide* belief of his possessing an interest in the mule of which the taking was an assestion, and should not be convicted. This the jury must consider and determine upon evidence.

The jury found the defendant guilty, and on his motion for a new trial, errors are assigned in the refusal to give the instructions asked, and in those given in substitution therefor, which it is needless to specify in detail. The motion being overruled and sentence pronounced, the defendant appealed.

The *Attorney General*, for the State.
No counsel for the defendant.

SMITH, C. J., (after stating the facts). If the directions given to the jury to confine their verdict to the charge made in the first count of the indictment, and to disregard the others, are to be considered as qualifying the general verdict and restricting it to the first count, (and this is expressly sanctioned as proper in the case of *State* v. *Long,* 7 Jones, 24; and *State* v. *Leak,* 80 N. C., 403;) the legal result is an acquittal as to the counts not passed on ; *State* v. *Taylor,* 84 N. C., 773. After the empanelling of the jury, and before verdict, the prosecuting officer cannot enter a *nolle prosequi* without the consent of the accused, as he has a right to a response

from the jury to all the charges, and if such is done, it is deemed to be in effect an acquittal. We do not, of course, mean to question the right of the Judge in proper cases to cause a mistrial; *State* v. *Weaver*, 13 Ired., 203, and subsequent cases; but this right cannot be exercised at the will of the solicitor. The entry of the *nol. pros.* after verdict was therefore superfluous and inoperative.

The objection to the rendition of judgment upon the general jury finding upon the indictment in its entirety, and with its incongruous union of counts, which would be fatal, under the ruling in *State* v. *Johnson*, 75 N. C., 123, and which is not modified in *State* v. *Lawrence*, 81 N. C., 523, for reasons therein stated, is thus removed, and we are at liberty to consider the appeal upon its merits.

During the argument, it occurred to us that perhaps too much stress had been laid upon the question of the defendant's having property or an interest in the mule, or in his acting upon the honest belief that he had such, and the attention of the jury had not been called to the inquiry whether, without reference to property, strictly speaking, the taking had or had not been under a *bona fide* belief of the defendant that under the circumstances he had a right to regain possession, which unexplained, the jury might not consider as property or an interest within the meaning of the charge. The facts were not presented in this aspect to the jury. But no direction of this kind was asked, and the omission is not assigned for error.

In our examination of the case, unaided by argument for the appellant, we discover none of the errors mentioned in connection with the motion for a new trial, and none in the charge, which covers all the material matters to which the accused was entitled in the instructions requested.

The jury find against him upon the alleged *bona fides* of the taking, and this is exclusively within their province.

There is no error, and this will be certified for further action in the Court below.

No error.                                                    Affirmed.