JAMES LIMBER v. STATE OF OHIO.

INDICTMENT UNDER REV. STAT. 6820 (LAN. 10420) NOT BAD FOR DUPLICITY WHEN ACTS CHARGED IN CONJUNCTIVE.

An indictment will not be quashed for duplicity which charges that the defendant shot with intent "to wound, maim, *and* kill," charging the crime in the conjunctive whereas the statute, Rev. Stat. 6820 (Lan. 10420), describes the crime in the disjunctive, "with intent to kill, wound, *or* maim."

[For other cases in point, see 5 Cyc. Dig., "Indictments and Informations," §§ 406-428.—Ed.]

ERROR to Wood common pleas court.

**E. T. Dunn** and **Edward Beverstock,** for plaintiff in error.

**J. E. Ladd,** prosecuting attorney, and **E. G. McClelland,** for defendant in error.

**PARKER, J.**

The plaintiff in error, James Limber, was indicted under Rev. Stat. 6820 (Lan. 10420) and was charged in the indictment that on the twenty-third day of September in the year of our Lord, one thousand, nine-hundred and four, with force and arms in said county of Wood and state of Ohio, with a certain pistol then and there loaded with gunpowder and one leaden ball, which said pistol, he, the said James Limber, in his hand then and there had and held, one Abram E. Freeman did unlawfully, maliciously and purposely shoot, with intent then and there and thereby him, the said Abram E. Freeman, to wound, maim and kill, contrary to the form of the statute, etc.

A motion to quash on account of duplicity was filed, and overruled, and exception taken to the ruling. The case then went to trial and resulted in the conviction of the plaintiff in error, and it is said that the error which the court committed in overruling this motion to quash was repeated in the charge, and that it was not in any way cured by the

verdict, since the verdict is general in form. It is said that the duplicity consists in charging that the plaintiff in error was guilty of the crime of shooting with intent to wound, and with the additional crime of shooting with intent to maim, and with the further crime of shooting with intent to kill. The statute reads:

"Whoever maliciously shoots, stabs, cuts, shoots at, another person, with intent to kill, wound or maim such person, shall be imprisoned in the penitentiary not more than twenty years nor less than one year."

It will be observed that, while the statute recites what the plaintiff in error claims are different crimes, the matter of wounding, maiming or killing in the disjunctive, the indictment charges him in the conjunctive, that the said James Limber did this thing with intent to wound and kill, and the court in charging the jury said to them: "The defendant must have maliciously shot Abraham E. Freeman as charged in the indictment, and the shooting must have been done with the intent either to maim, wound or kill the said Abraham E. Freeman."

It is contended on behalf of the state that these are not three distinct offenses; that these are different forms of stating the same offense and describing it; that these are different ways in which, or means by which the same offense may be committed, and it is along that line of difference that the discussion has run and counsel in the course of their argument have cited a large number of authorities. I cannot take time to call particular attention to a great many of them or to undertake to discuss or review them at length. I will call attention to a few of the later authorities especially in Ohio that seem to us to bear directly upon the question. One of the cases cited is *Hale v. State*, 58 Ohio St. 676 [51 N. E. Rep. 154]. Hale was indicted for practicing medicine without having complied with the act to regulate the practice of medicine within the state of Ohio. The indictment charges that he did knowingly, wilfully and unlawfully practice medicine in the state of Ohio without having first complied with the provisions of the act of the general assembly of the state of Ohio entitled, "An act to regulate the practice of medicine in the state of Ohio," passed February 27, 1896 (92 O. L. 44; Rev. Stat. 4403; Lan. 7507), in this, that at the time and place aforesaid he, the said William F. Hale, did for a fee, to wit: the sum of thirty-five cents, prescribe, direct and recommend for the use of one C. B. McClelland, a certain drug, medicine and agency, to wit, a certain drug, medicine and agency put up in a tablet form as aforesaid and encased in a certain paper box, upon the outside of which said paper box then and there containing said medicine put up in tablet form as aforesaid, he, the said William F. Hale, then and there wrote and signed his name to a certain prescription and direction, and he, the said William F. Hale, then and

Limber v. State.

there annexed and appended the letters "M. D." to his said name so written and signed to said prescription and direction as aforesaid, etc., etc.; that is the substance of the charge.

The statute involved provides that any person shall be regarded as practicing medicine or surgery within the meaning of the act who shall append the letters "M. D." or "M. B." to his name, or for a fee prescribe, direct, or recommend for the use of any person, any drug or medicine, or other agency for the treatment, cure or relief of any wound, fracture or bodily infirmity or disease.

The point sought to be made against this indictment was, that it was bad for duplicity because it charged that he did both of those things described in the statute, viz., prescribed a prescription, and signed his name appending the letters, "M. D." thereto, and that he did also prescribe a certain drug and received a fee for it. The court held it was not duplicity in this case, and beginning at the bottom of page 679, this is said by Judge Williams:

"It appears to be a well-settled rule of criminal pleading that, when an offense against a criminal statute may, in the same transaction, be committed in one or more several ways, as therein provided, the indictment may, in a single count, charge its commission in any or all of the ways specified in the statute, if they are not repugnant; and proof of any one of them will sustain the indictment. This rule is more fully stated in Bishop, New Cr. Proced. Sec. 436 as follows:

" 'A statute often makes punishable the doing of one thing, or another, sometimes specifying a considerable number of things. Then by proper and ordinary construction a person who, in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore, an indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction, and, where the statute has "or," and it will not be double, and it will be established at the trial by proof of any one of them.' "

Counsel for plaintiff in error attempts to distinguish that case from the one at bar in this way:

He says that the thing forbidden by the statute was unlawfully practicing medicine,—prescribing medicine, etc.,—and that that might be done in one or more of several ways, either by writing a prescription and signing his name with "M. D." appended, or by giving a drug or prescribing it and accepting a fee for it, and some other ways, but in these two ways at least, and that the crime charged may be committed by all of the other means indicated by the statute; that any one of the

several crimes included in this statute might be committed by any one or more of the several ways pointed out in the statute; that it is a crime to do the certain things mentioned in the statute; that it is one crime to do the several things mentioned in the statute with intent to kill; that it is another crime to do any one or more of those several things with the intent to wound, and it is another crime to do one or more of those several things with the intent to maim a person; that it would be permissible to charge that one had maliciously shot, and stabbed and cut, and shot at another person with intent to kill, or that one did one or all of those several things with intent to wound; or that one did one or more or all of those several things with intent to maim, but that it is not permissible and it is duplicity to charge that one did one or more or all of said several things with intent both to kill and wound, and maim; that those several acts of shooting, stabbing, etc., are means by which the act may be perpetrated; that the act to be perpetrated of which the crime consists in part is distinguished by the intent.

As I have said before, you can kill in one case; you wound in one case, and maim in one case. It will be observed that all of counsel's contention is based upon the definition which he gives. He analyzes the statute so as to define three separate offenses, but the whole matter made punishable under this statute is described in one section and one sentence, and we do not find authority for the definition and division counsel has been pleased to make here.

We think the statute is meant to reach one class of acts and the performance of any of those acts with any of these intents is the single crime that the statute means to define and reach. That is to say, the statute defines it in the sense that it indicates the elements of it; it does not define it as we generally understand the term, definition,—as definitions are usually drawn up by the text writers and sometimes by the courts. If we were to make a comprehensive definition here of the nature, the character of the offense that the statute undertakes to prohibit and for the violation of which it prescribes the penalty, we would say it would be something like this: "That it is the infliction of certain injuries upon the person," or, in case of shooting, "an attempt to do so by shooting at with intent either to kill or wound or maim. They are not different degrees, for the Supreme Court has said they are not, so that, according to our view of the matter, if one should do all the acts described here, in all the ways pointed out, with all of the intent indicated, in a single transaction, he would commit but one crime; and they are not repugnant; they are not inconsistent. It is possible they might all be done by one person in one transaction. Of course it would involve a good deal of activity on the party. He might be regarded in

Limber v. State.

the light of one running amuck; he would certainly be a dangerous citizen who would attempt all these things, and that is the way we must view this matter. In other words, it would be possible for one in the same transaction, having the weapons on hand, to shoot, stab, and to cut and shoot at another person, and to do it in the course of that transaction with the intent to maim the person, and with the intent to wound the person, and as his anger and maliciousness grew upon him, with intent to kill the person, and it does not appear to us that an indictment would be bad that would charge that one in an affray or in an angry transaction did all of those things with all of those intents.

Now as I have said, a great many authorities have been cited, and we cannot take time to discuss them. I call attention to them so that the stenographer may preserve them. They are: *State* v. *Leavitt*, 87 Me. 72 [32 Atl. Rep. 787]; *Hale* v. *State*, 58 Ohio St. 676 [51 N. E. Rep. 154]; *Benn* v. *State*, 22 Ala. 9 [58 Am. Dec. 234]; 2 Va. C. A. S. 231. A great many cases will be found in 27 Cent. Dig. p. 668, Sec. 351. *State* v. *Conner*, 30 Ohio St. 405, 406; *Jackson* v. *State*, 39 Ohio St. 37; *Mitchell* v. *State*, 11 Circ. Dec. 446-450 (21 R. 24); *Breese* v. *State*, 12 Ohio St. 146 [80 Am. Dec. 340]; *Fahnestock* v. *State*, 102 Ind. 156 [1 N. E. Rep. 372]; *State* v. *Fidler*, 148 Ind. 221 [47 N. E. Rep. 464; *People* v. *Leyshorn*, 108 Cal. 440 [41 Pac. Rep. 480]; *Crain* v. *United States*, 162 U. S. 625 [16 Sup. Ct. Rep. 952; 40 L. Ed. 1097]; *Burke* v. *State*, 34 Ohio St. 79; *Duttenhofer* v. *State*, 34 Ohio St. 91 [32 Am. Rep. 362]; *State* v. *Pittman*, 76 Mo. 56; *State* v. *Kerr*, 3 N. Dak. 523 [58 N. W. Rep. 27]; *Stoughton* v. *State*, 2 Ohio St. 562, 563; *State* v. *Inskeep*, 49 Ohio St. 228 [34 N. E. Rep. 720]; *Watson* v. *State*, 39 Ohio St. 123; *Mackey* v. *State*, 3 Ohio St. 363; *Barber* v. *State*, 39 Ohio St. 660.

The case of *State* v. *Conner*, *supra*, was a prosecution under the liquor laws, and this was said in the syllabus:

"Under the act 'to provide against the evils resulting from the sale of intoxicating liquors in the state of Ohio' (2 S. & C. 1431 [52 O. L. 153; see Rev. Stat. 6940; Lan. 10589]), a count in an indictment charging that the defendant unlawfully, etc., sold intoxicating liquors to one 'being then and there intoxicated and in the habit of getting intoxicated,' defendant knowing, etc., is not bad for duplicity."

It will be remembered that the statute provided that it would be unlawful to sell to one intoxicated, or in the habit of getting intoxicated, and Judge Wright in discussing the matter, on page 406 says:

"It appears to have been claimed in the court below that selling liquor to a person intoxicated was one offense, and that the same sale to that person, he being a person in the habit of getting intoxicated, was

another, and that by joining the two in a single count, two separate and distinct crimes were charged. We cannot so regard it. The offense is but a single one. There is but one sale of liquor, and but one person to whom it is sold. The fact that such person represents two characters, under the statute, does not make the offense double. The indictment may be sustained, by proving, either that the liquor was sold to one intoxicated, or by proving that it was sold to one in the habit of getting intoxicated, or by proving both of these elements.

"Manifestly, if there are two distinct and separate offenses, a defendant might be convicted on proof of selling to one intoxicated. Then he might be convicted for selling, at the same time, to the same person, because that person was in the habit of getting intoxicated. Thus would result two convictions for precisely the same unlawful act."

Further down he quotes from Bishop, Stat. Crimes Sec. 383: "'If an indictment is to be drawn on a statute in alternative clauses, the pleader, as a general rule,  *  *  *  may elect to charge no more than constitutes an offense within one clause, or he may proceed upon two clauses, or three, or all, as he deems best, and all in a single count; employing the conjunctive, and, when the statute has the disjunctive, or. See also Secs. 521, 759. *State* v. *Batson,* 31 Mo. 343; 1 Bishop, Cr. Proced. Sec. 436 and note 3; 1 Wharton, Cr. Law Sec. 390.

"Our statute as to counterfeiting is: 'If any person shall falsely make, alter, forge, or counterfeit.' An indictment, alleging the uttering of a 'false, forged, counterfeit bank note' is held to be good. *Mackey* v. *State,* 3 Ohio St. 363. *Stoughton* v. *State,* 2 Ohio St. 562."

In the case at bar, manifestly, if there were established that one had shot at, or stabbed, or cut within the course of the transaction with intent to maim or wound and with the further intent made manifest probably later in the transaction that he did the same things or repeated the same acts with intent to kill, the state could not make two crimes of that. The state would be confined to one prosecution and for the one crime growing out of the single transaction of doing those several things with different intents.

The case of *Watson* v. *State,* 39 Ohio St. 123, is instructive along this line. I cannot now take time to comment upon it. That is a case where one was indicted for corruptly offering and promising to a member of the house of representatives of the general assembly of the state of Ohio, with intent corruptly and feloniously to influence his vote upon a certain bill then pending in such house, "a valuable thing," to wit, stock of the Cincinnati Union Railway Company, of the amount and value of $20,000, and a large amount of money of great value. It was charged that this was done to influence him as a member of the

Limber v. State.

house of representatives, and also to influence him as a member of the standing committee of the house.

It was urged that there was duplicity there; that it charged separate and distinct offenses; that attempting to bribe a member of a legislative committee as to his action as such, was an offense, and that an offer to bride him as such committeeman was a different offense from an offer to bribe him as a member of the house; but the court held that it was not duplicity.

In the case of the *State* v. *Inskeep,* 49 Ohio St. 228 [34 N. E. Rep. 720], the defendant was indicted and charged that he did "unlawfully make an assault in and upon one John W. Moler, and him, the said John W. Moler, did then and there strike and wound," with the usual conclusion. A motion to quash the indictment was sustained on the ground that, "It contains but one count and two separate and distinct offenses."

Charged him with striking, and the further offense of wounding; but the Supreme Court held that the common pleas court erred in sustaining the motion to quash, saying:

"The indictment is not bad for duplicity; is in the proper form, and the motion should have been overruled."

I cannot take further time to go over these cases. We think there is sufficient authority to be found in these cases cited from our own Supreme Court to justify the ruling by this court in this case, and our conclusion is, that the court did not err in its ruling on the motion to quash, and did not err in its charge; that there is no prejudicial error in this record, and the judgment of the court below is affirmed.

**Haynes, J.,** concurs.